457 A.2d 1260

**Edgar D. NELSON, Trading and Doing Business as Nelson House, Appellant,**

v.

**TUSCARORA INTERMEDIATE UNIT NO. 11, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 8, 1982.

Decided March 16, 1983.

Bayard M. Graf, Philadelphia, for appellant.

John R. Miller, Bellefonte, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

McDERMOTT, Justice.

This is an appeal from the order of the Commonwealth Court,[1] which affirmed the decision of the Court of Common Pleas of Huntingdon County,[2] granting appellee a judgment of $1,687.09 plus interests and costs as against appellant for the educational costs for school year 1973–1974 incurred by a mentally retarded minor who temporarily resided at appellant's private care facility. The issue is whether the Commonwealth of Pennsylvania by Act of Assembly[3] may require a private Pennsylvania institution to pay the cost of education in public school of a mentally retarded child residing in such Pennsylvania institution, where the parents of the child are residents of the State of New Jersey.[4]

The facts of this case are undisputed and as follows: the handicapped child was born on June 11, 1959 of parents who have at all times relevant resided in New Jersey. On June 26, 1972, this lad was transferred by his parents from the Lochland School in Geneva, New York to Nelson House, located in Huntingdon County, Pennsylvania. At this time, the child did not move to New Jersey because a residential facility could not be found there that was suitable to his needs. The trial court determined that this youth was a trainable mentally-retarded child suffering from limitations of immature behavior and lack of self-control.

Appellant, Nelson House, is a private institution, licensed by the Pennsylvania Department of Public Welfare, providing residential care for mentally retarded children. Appel-

1. *Nelson House v. Tuscarora Intermediate Unit No. 11,* 59 Pa. Cmwlth. 514, 426 A.2d 1234 (1981).

2. Initially, this case was removed to the United States District Court for the Eastern District of Pennsylvania at Civil Action No. 75–1987, but was remanded to the Huntingdon County Common Pleas Court by Order of Edward R. Becker, J., dated December 23, 1976.

3. Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. § 13–1301 *et seq.*

4. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, 2, 42 Pa.C.S.A. 724.

lant orally agreed with the child's parents to provide the boy with residential support at a cost of $600.00 per month from June of 1972 through the 1975–1976 school year. Appellant, as a private institution, has received no funding from the Commonwealth of Pennsylvania or the State of New Jersey for this child's maintenance or education.

Appellee, Tuscarora Intermediate Unit No. 11, pursuant to the Public School Code,[5] enrolled this child in its program for trainable mentally retarded students for the 1973–1974 school year, and billed appellant Nelson House $1,687.09 for the tuition for this period. Appellee did not seek to recover the cost of the child's education from his parents. Appellee received federal funding throughout the 1973–1974 school year when this child was enrolled at Tuscarora Unit No. 11.

In July 1975, appellee brought an action in assumpsit against Nelson House, seeking to recover the cost of the child's education. Nelson House now seeks reversal of that judgment which required appellant to pay such costs.

■ A comprehensive review of the relevant provisions of the Public School Code indicates that appellant was obligated under the Public School Code to pay for the child's education while such child resided at appellant's private institution.

Initially, this child is not entitled to free education by virtue of being a resident of the school district serviced by Tuscarora Unit No. 11. Section 1302 of the Code, 24 P.S. § 13–1302 provides in relevant part that, "A child shall be considered a resident of the school district in which his parents or the guardian of his person resides." The youth's parents resided in New Jersey and the Nelson House was not a "guardian" but simply a temporary custodian while the child resided at appellant's residential care facility.

Rather, the Public School Code specifically targets the private institution as bearing the burden of educational costs for out-of-state children that temporarily reside in the institution. Section 1308, 24 P.S. § 13–1308, which details the tuition liability for inmates of children's homes, provides in

5. 24 P.S. § 13–1306. Non-resident inmates of children's institutions.

pertinent part: *"If any inmates have been received from outside of Pennsylvania . . . their tuition shall be paid by the institution having the care or custody of said children."* Moreover, Attorney General Opinion No. 69, dated October 11, 1973 interprets 13 P.S. § 13–1308 as follows:

"The institution is responsible for the public education tuition of out-of-state children. Therefore, *the institution should make arrangements with the parents for the child's educational expense before accepting the child.*

If the out-of-state parents refuse to pay the institution, the institution must bear the expense." Pa. Bulletin, Vol. 3, No. 46, October 27, 1973 (emphasis added)

We find this interpretation of legislative intent to be both accurate and reasonable. Therefore, it is clear that the Nelson House, having accepted this boy into its program at a fee of $600 per month and having been on statutory notice of its obligation for these educational costs, is responsible for the lad's tuition under 24 P.S. § 13–1308 of the Pennsylvania Public School Code.

Appellant argues, however, that 24 P.S. § 13–1308 violates the equal protection clause of the Fourteenth Amendment to the United States Constitution, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the law." In support of his equal protection argument, appellant relies upon *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). In *Plyler,* the Supreme Court struck down a Texas statute as violative of equal protection which called for a withholding of funds from local school districts for education of illegal alien children and which authorized the school districts to deny enrollment to such children. Appellant avers that there is no difference between the illegal alien children that are residing in Texas and the child in the instant case that finds himself a legal resident of New Jersey yet residing in a private institution within the jurisdiction of Pennsylvania. As appellant's argument follows, since the Supreme Court in *Plyler* effectively mandated free public education for illegal aliens in Texas, Pennsylvania must provide the child in this case with a free public education. Therefore, it was improp-

er to charge tuition of the appellant, despite the fact that 24 P.S. § 13–1308 holds such institution liable. However, the rationale of the *Plyler* decision does not at all lend itself to the case at bar.

In *Plyler,* the issue was whether Texas could deny educational benefits to a class of persons who found themselves within the boundaries of Texas *illegally.* The Court in *Plyler,* after noting that the minor children of illegal aliens could not affect the conduct of their parents in illegally entering this country, held that the Texas statute "imposes a lifetime hardship on a discrete class of children not accountable for their disabling status. The stigma of illiteracy will mark them for the rest of their lives." At 223, 102 S.Ct. at 2398. Clearly the *Plyler* Court's concern was with a state's treatment of the minor children of illegal aliens and their holding cannot be extended to require Pennsylvania to provide free public education to the minor children of parents from other states, who decide to have their children raised in a private institution in Pennsylvania.

■ Quite to the contrary, we find that the statutory scheme of free education under the Pennsylvania Public School Code does not invidiously discriminate against out-of-state residents in violation of the equal protection clause. Free public education within any school district is available only to residents (as defined in 24 P.S. § 13–1302) of that local school district. 24 P.S. § 13–1301. And, the board of school directors of any school district may charge tuition to all out-of-district pupils that care to attend public school in their district, whether those pupils are residents of other Pennsylvania school districts or of other states. See 24 P.S. § 13–1301, 13–1306. In this regard, Pennsylvania residents are clearly not accorded any special treatment over out-of-state residents under the public school code. Therefore, we find appellant's claim of an equal protection violation to be without merit.

Appellant also asserts that Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, was violated by charging Nelson House for the child's education. That section provides in relevant part,

"No otherwise qualified handicapped individual in the United States, as defined in section 7(7) [29 USCS 706(7)], shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..."

The Department of Health, Education and Welfare (now HHS) promulgated interpretive regulations [6] whose purpose was to effectuate section 504 of the Rehabilitation Act of 1973. Appellant relies upon H.E.W. regulation No. 84.33(a) which provides, "A recipient that operates a public elementary or secondary education program shall provide a free appropriate public education to each qualified handicapped person who is in recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 45 C.F.R. 84.33(a). Appellant's argument is that Tuscarora Intermediate Unit No. 11, as a recipient of federal funding, was obligated to provide this child, as a qualified handicapped individual in its jurisdiction, with a free public education. Therefore, it was improper to charge appellant for this child's tuition.

However, after reviewing cases construing § 504 of the Rehabilitation Act of 1973 and reviewing the Act's interpretive regulations, we find that appellant Nelson House does not have standing to assert any rights under this federal statute. The standard for standing under § 504 of the Act was set out in *Kampmeier v. Nyquist,* 553 F.2d 296, (2d Cir.1977), where the second circuit held that students with vision in only one eye, who were refused permission by public school officials to participate in contact sports had standing, along with their parents, to bring suit against school officials under § 504 of the Rehabilitation Act of 1973 *because they were the people in the best position to enforce*

6. It should be noted that these regulations were not in effect at the time of this controversy in 1973–1974 and, thus, they are not binding. However, a review of these subsequently enacted regulations serves as a meaningful guideline in ascertaining the intended rights and liabilities under this statute.

*§ 504, which is designed specifically for their protection.* 553 F.2d at 299 (Emphasis added). As it relates to free public education, § 504 of the Rehabilitation Act of 1973 was designed for the protection of the handicapped person or his or her parents or guardian. HEW regulation 84.-33(c)(1) explicitly states, "... the provision of a free education is the provision of educational and related services without cost to the handicapped person or to his or her parents or guardian ..." And Nelson House has made no claim that they are bringing this suit on the child's behalf or that the child's parents in New Jersey will be refunded any funds in the event appellant were to succeed in this case. Moreover, HEW regulation 84.33(c)(1) notes, "Nothing in this section shall be construed to relieve an insurer or similar third party from an otherwise valid obligation to provide or pay for services provided to a handicapped person." 45 CFR 84.33(c)(1). Nelson House with such a valid obligation under 24 P.S. § 13–1308 was clearly never intended to have standing to seek refuge under this federal statute.

For the reasons set forth above, the order of the Commonwealth Court is affirmed.

O'BRIEN, former C.J., did not participate in the decision of this matter.